HENRY TICHOUT *vs.* ARGALUS and CALVIN HARMON.—*IN CHAN-CERY.*

*Chittenden,*
*December,*
*1826.*

The orator having mortgaged his farm—pending his equity of redemption, which had been limited by a decree of Court, the defendants levied two executions in their favour, on a part of said farm, and caused so much thereof to be set out, as would, in the opinion of the appraisers, amount to the sum of their executions, together with the mortgage money. They then procured an assignment from the mortgagee, of his interest in the premises, to a stranger, and from him to themselves, which, after the equity of redemption had expired, they caused to be recorded, and brought eject-ment against the orator for the whole farm. The orator thereupon brought his bill in chancery, praying that the defendants might be perpetually enjoined from all proceedings by virtue of the as-signment; that the consideration of the assignment be deemed a satisfaction of the mortgage, and that the defendants be decreed to release to him all the land assigned to them, not embraced in the levy of their executions. On demurrer, *held*, that he was not entitled to the relief sought.

THE facts in this case will sufficiently appear from the fol-lowing opinion of the Court, which was pronounced by

HUTCHINSON, Chancellor. The claim of the orator, as may be summarily stated, is, that he was indebted to one *Harrington,* and secured his debt by a mortgage of a farm of about one hun-dred acres; that payment was not made, and *Harrington* brought his bill and obtained a decree of foreclosure. That, while this was running, the respondents caused two executions to be ex-tended upon a part, to wit, about thirty or thirty-one acres of said farm, and had the same appraised as the law directs; that, as the mortgage of *Harrington* was an incumbrance upon the whole farm, they placed their executions upon so much of the same as, according to the judgment of the appraisers, would amount to the executions and *Harrington's* decree, that it there-by became the duty of the respondents to pay and satisfy the said mortgage of the said *Harrington,* and procure the same to be cancelled; but that, instead of so doing, by which a part of said farm would have remained for the orator, without incum-brance, the respondents, for the purpose of securing to them-selves the whole of said farm, and thereby ruining the orator, did, in a secret and clandestine manner, procure an assignment from *Harrington* of his right as mortgagee of the premises, run-ning to one *Wheeler,* but for the benefit of said respondents; and, after the decree of foreclosure had become absolute, plac-ed upon record a deed from *Wheeler* to themselves, of the whole premises. And the orator assigns as a reason for his not re-deeming, that he believed that the respondents were obligated to redeem the same.

Upon these facts, the Court will decide as they would if the defendants had procured a conveyance directly from *Harrington* to themselves, without the intervention of *Wheeler,* for such is the equity; the deed to *Wheeler* being, as is alleged, for their benefit.

The defendants have demurred to this bill, and the question presented is, whether the orator is entitled to relief upon all the allegations in the bill? and, if to any relief, whether to that which is prayed for.

Chittenden,
December,
1826.

Tichout
vs.
Harmon et al.

The prayer is not that the orator may yet be suffered to redeem either the whole premises, by paying the defendants the amount of the executions and the mortgage money, nor the part not covered by the executions, by paying the mortgage money only. If such were the object, the orator would need to state some additional facts on which to found his equity. He should state something done by the defendants, which in equity and good conscience they ought not to have done, some pretensions of theirs contrary to fact, by which he was deceived with regard to his rights, and that from these he has sustained an injury. Or he should have shown such an immense value of the premises lost, that the Court could but presume some decoy in which the defendants were to blame ; or such entire imbecility of the orator and ignorance of his rights, that for such reasons this Court ought to extend their protection.

The bill has presented no such grounds of relief. The orator prays for an injunction upon a suit at law, brought to recover the premises from him, and a release from the defendants for the part of the premises not covered by the levies of the executions, and that the assignment may be taken and deemed an extinguishment of the mortgage.

The counsel for the orator are disposed to assimilate this to a case of a purchase by the defendants of the premises, covered by the levies, subject to the mortgage, and a case is relied upon in the 7th of *Mass. R.* 355, *Taylor* et al. vs. *Porter*, and also 10 *Johns. R.* 32, *Sawyer* vs. *Lyon*, where it is decided, that several persons purchasing of a mortgagor several pieces of the mortgaged premises, must each contribute towards the redemption money, according to the quantity of his interest so purchased, and if one pays the whole redemption money, he can recover of each of the others their portion. It is not decided in those cases, that if all those purchasers neglect to redeem, any one has any remedy against the others. No one is permitted to say, I thought the others under obligation to redeem, and believed they would redeem, and trusted to that course, and have lost my land, and now they must make good my loss. All this would be necessary to make those cases parallel with this, unless the Court should decide that the defendants, in the case before the Court, were really under obligation to redeem the mortgage of *Harrington*, for the concurrent benefit of themselves and the orator.

Upon this also depends the applicability of the case in the 7th of *Johns. R.* 278, *The widow of Collins* vs. *Torry.* There, a man in the chain of the title of the mortgagor had conveyed to the defendant in that case, *with warranty*, and then purchased from the mortgagee an assignment of his interest, which operated to discharge his own covenants of warranty. The Court correctly decided, that a purchase of the mortgagee's title by him who was bound by his covenants, that the mortgagor's title should prove to be a good title, was itself a redemption of the mortgage. His remedy must, of course, be upon the covenants in his deed of

*Chittenden,*
December,
1826.

Tichout
*vs.*
Harmon *et al.*

purchase, and so running back to the first mortgagor; and indeed *this* remedy would be imperfect, according to the decisions in that state, until the incumbrance was discharged. It must be presumed, from the report of that case, that the widow had never joined with her husband in his deed of the mortgagor's title. Therefore, her right to recover of the defendant who derived title from her husband, was plain, according to the laws then in force in New-York. The defendant attempted to set up the assignment of the mortgagee to the covenantor of him, the defendant, as an outstanding title to defeat the plaintiff. This the Court would not permit, and that undoubtedly for the reason above assigned, that he who took the assignment was under obligation, by his own contract, to extinguish the outstanding title of the mortgagee.

It will be proper now to inquire, whether these defendants were under any such obligation to redeem the mortgage of *Harrington*, that, under the force of these authorities, the assignment from *Harrington* must operate to extinguish his mortgage?

These defendants, as creditors of *Tichout*, were entitled to the money for their debts. It was not paid. They resorted to the coercive measures of the law to enforce payment. Their best, and perhaps their only remedy, and that not the most eligible in its nature, was to levy upon real estate and receive it at the appraisal of men. But they find this real estate incumbered with a mortgage, which it was also the duty of the same debtor, the orator, to pay off. They levy upon a portion of this estate subject to that incumbrance. The orator had time to redeem his farm from all these incumbrances, by paying his own debts, which must now be considered as honest debts, for they were all sanctioned by judicial tribunals. It was his duty to pay them, and he complains of no act of the defendants which was at all in the way of his selling his farm, and, with the purchase money, paying off all these incumbrances. He could have redeemed from *Harrington* at the last moment of his decree, and had he done it, *Harrington's* assignment would have had no other effect than to give the assignee a right to receive the redemption money.

But the arguments in behalf of the orator seem to suppose, that the levies in question imposed upon these defendants the duty of redeeming, not the duty to themselves, merely to avoid the loss of their debt, but duty to the orator, who by his neglect to pay his debts, had forced these defendants into their dilemma; the duty to redeem, not merely the land, which would be theirs when redeemed, like the case in the *7th of Johns. R.* but also the remaining farm of the orator, to which the *Harrington* mortgage was attached. These arguments cannot be supported upon grounds which leave a less obligation upon these defendants to redeem, than that which all the time rested upon the orator. Much less can they be supported, upon the ground that the neglect of the orator to discharge his own duty has imposed a paramount duty upon the defendants.

The counsel for the orator, with a view more fully to evince
this paramount duty, urge that the title all passed from *Tichout*
by the levy, and that his having six months to redeem makes no
difference.    To support this, they cite 12 *Mass. R.* 387, *Kelly
and wife* vs. *Beers,* also 2d of *Pick. R.* 276, *Ingersol* vs. *Sawyer.*
Those cases seem to favour the orator upon this point, at first
view, yet, in the end, fully assert the right of the debtor, by pay-
ing the amount of the levy, to restore all his former rights,
among which, that of redeeming the mortgage is expressly nam-
ed.

But further, those decisions are founded upon the statutes of
that state, which are wholly unlike ours upon the same subject.
We have not had the perusal of those statutes this term, but by
allusions to them in reported cases, there can be no doubt but
that the levying creditor is entitled to immediate seizin, and, in
case of redemption by the debtor, must convey the premises back
by deed.    In the 11*th of Mass. R.* 207, *Waterhouse* vs. *Waite,* it
is decided, that the creditor's neglecting, for thirty days after the
levy of his execution, to receive actual seizin, was a waiver of
his lien created by his attachment.

By our statute, the levying creditor has no right to seizin till
the six months expire, and then, if the debtor redeems, there is
no need of a conveyance back, but a certificate of the payment
forever discharges the creditor's lien and title.

The orator probably calculated, that his neglect to pay his
debts had so hedged up the way of his creditors, that they, choos-
ing among evils, would in fact redeem his farm for him and
themselves.    But the Court consider them under no obligation
to such a measure.    If they were not satisfied with the appraisal,
they had a right to abandon the levy altogether.    Their debts,
to be sure, were satisfied, but they were not obliged to take pos-
session under the levy, and meet whatever embarrassments might
arise from an unexpected appraisal, in connexion with the ex-
penditures to clear incumbrances.    They had a right to refuse
to pay money for real estate, after they were informed of the
price.    If these defendants considered that they should sustain
a loss by redeeming, they might well refuse to do it, and resort
to the other expedient of purchasing the title of the mortgagee,
*Harrington.*    This imposed upon the orator no new burden
whatever.    It was merely a refusal by the defendants to accept
of a transfer of the burden that already rested upon the shoul-
ders of the orator.    It was a refusal to hold as mortgagor, and
an election to purchase and hold as mortgagee.    This, as before
observed, might have been prevented by the orator's redeeming
at any time within the year.

It is correctly admitted in one of the briefs, that a person hav-
ing a second or third incumbrance, may purchase in a prior in-
cumbrance and hold it *as such,* the mortgagor still having a right
to redeem the whole.    The argument, however is, that this levy
is not in the nature of a second incumbrance.    The Court con-
sider it to be a second incumbrance.    It is so in Massachusetts,

whenever the orator choses to treat it as such. It is emphatically so in this state, by a fair construction of our statute upon the subject of levies.

*Chittenden,*
December,
1826.

*Tichout*
*vs.*
Harmon *et al.*

The orator, however, contends that a levy upon land enough to pay the executions and the mortgage, is to operate like a contract by which the defendants made themselves holden to discharge the mortgage. This is not acceded to by the Court. It seems, that while the orator was virtually contending that the defendants had so made their levy, that they must redeem the whole farm or lose their debt, these defendants were virtually contending that the orator must redeem *Harrington's* mortgage, or lose his farm; and if he redeemed that mortgage, he must also redeem the executions, to prevent the defendants holding the premises levied upon, at a lower sum than the appraisal. The orator probably wished to pay his debts with land, and sell other lands for money, while the defendants were unwilling to act the counterpart of either, unless they could trade for themselves about the value. Each calculated for himself what he would and would not risk.

Bona fide purchasers of different portions of the lands of the mortgagor, or bona fide creditors levying upon such separate portions, may apply to a court of equity, to compel an equitable contribution towards the discharge of incumbrances. But the mortgagor himself, who ought to clear all the incumbrances, can have no such right against such purchasers or levying creditors, unless it result from the nature of their contracts, or some principle of fraud or trust, which does not appear in the case before us.

The demurrer of the defendants is, therefore, allowed, and as it reaches the whole merits of the bill, the decree of the Court is, that the bill be dismissed, with costs.

PRENTISS, Chancellor, absent by reason of indisposition.

*Chs. Adams* and *C. P. Van Ness*, for the orator.

*B. F. Bailey* and *Wm. A. Griswold*, for the defendants.

N. B.—On suggestion of an important fact, not comprised in the orator's bill, the Court directed the dismissal to be without prejudice.